UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDWARD MIGHTY,

                              Petitioner,                15-CR-6109-FPG
                                                               21-CV-6324-FPG

v.

                                                                         DECISION AND ORDER

UNITED STATES OF AMERICA,

                              Respondent.

## INTRODUCTION

On April 15, 2021, *pro se* Petitioner Edward Mighty moved to vacate his conviction pursuant to 28 U.S.C. § 2255. ECF No. 194.[1] Thereafter, he filed four related motions for miscellaneous relief (ECF Nos. 199, 204, 205, 216), and the government responded to the petition with a motion to dismiss (ECF No. 209). The Court resolves all of the motions in this omnibus order.

## DISCUSSION

### I. Motion to Vacate Pursuant to 28 U.S.C. § 2255

On September 12, 2017, this Court entered judgment against Petitioner, who had pleaded guilty to one count of narcotics conspiracy and one count of possession of firearms in furtherance of a drug trafficking crime. ECF No. 170. Petitioner appealed on the ground that "his plea of guilty was not knowing or voluntary by reason of his lawyer's ineffective assistance." *United States v. Mighty*, 745 F. App'x 429, 430 (2d Cir. 2018) (summary order). In a decision dated December 20, 2018, the Second Circuit declined to hear the claim and "dismiss[ed] it without prejudice to [Petitioner] raising [it] pursuant to 28 U.S.C. § 2255." *Id.*

---

[1] All ECF references cited in this decision are associated with Case No. 6:15-CR-6109.

Petitioner did not file his Section 2255 petition until April 2021. ECF No. 194. Across all of his filings related to petition, Petitioner raises a litany of claims, including (1) ineffective assistance by retained counsel Teodoro Siguenza during pretrial proceedings and through the guilty plea; (2) ineffective assistance by substitute appointed counsel, John C. Putney, who represented Petitioner after his plea through direct appeal; (3) prosecutorial misconduct; (4) defects in his guilty plea; and (5) speedy trial violations and untimeliness with respect to his arraignment and (lack of) indictment.[2] In response, the government moved to dismiss the petition as untimely. ECF No. 209. Because the Court agrees that the petition is untimely, the government's motion to dismiss is GRANTED, and the petition is DISMISSED.

28 U.S.C. § 2255(f) imposes a one-year statute of limitations on motions brought under Section 2255, which begins to run from the latest of several dates. *See* 28 U.S.C. § 2255(f)(1)-(4). Two of those dates are relevant here. First is "the date on which the judgment of conviction becomes final." *Id.* § 2255(f)(1). Where, as here, the petitioner has appealed his judgment to the circuit court of appeals but does not file a petition for certiorari thereafter, the judgment "becomes final when the time expires for filing [the] petition for certiorari contesting the appellate court's affirmation of the conviction . . . [i.e.], 90 days after entry of the [c]ourt of [a]ppeals' judgment." *Gilley v. United States*, No. 16-CV-6390, 2017 WL 2403311, at *2 (W.D.N.Y. June 2, 2017) (quoting *Clay v. United States*, 537 U.S. 522, 525 (2003)); *see also Rabbani v. United States*, 156 F. Supp. 3d 396, 402 (W.D.N.Y. 2016).

The second relevant date for purposes of the statute of limitations is "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Under this standard, "[t]he relevant inquiry is 'when a duly diligent person in petitioner's circumstances would have discovered [facts supporting the

---

[2] The claims need not be recounted in detail because the petition is resolved on timeliness grounds.

claim].'" *Superville v. United States*, 771 F. App'x 28, 31 (2d Cir. 2019) (summary order) (quoting *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). "This does not require the maximum feasible diligence, only due, or reasonable, diligence." *Id.* (internal quotation marks omitted). The statute of limitations begins to run "from the date that the Petitioner could have diligently discovered the *facts* underlying his claim, not the date upon which the Petitioner could have discovered the legal salience of those facts." *Rodriguez v. United States*, No. 01-CR-538, 2008 WL 4663569, at *1 (N.D.N.Y. Oct. 20, 2008). "It is the Petitioner's burden to demonstrate why he was unable to discover the factual predicate of his claim before the date asserted." *Alvarez v. United States*, No. 08-CR-1192, 2019 WL 1428350, at *6 (S.D.N.Y. Mar. 29, 2019) (internal brackets omitted).

The petition is untimely under both subsections (f)(1) and (f)(4). As to subsection (f)(1), the central facts are not in dispute. On December 20, 2018, the Second Circuit issued its summary order affirming the judgment. Petitioner's time to seek certiorari elapsed ninety days later—on March 20, 2019. *See Rabbani*, 156 F. Supp. 3d at 402. Therefore, Petitioner had until March 20, 2020—one year later—to file his motion. Petitioner did not file his petition until April 2021, more than one year after that deadline. *See* ECF No. 194. Accordingly, the motion is untimely under Section 2255(f)(1).

Subsection (f)(4) does not change the outcome. It is apparent that Petitioner was aware of the issues he now raises even before the completion of his direct appeal. In November 2016, Petitioner, acting *pro se*, moved to dismiss the complaint and for other relief, arguing that the Speedy Trial Act had been violated, that he had not been timely indicted, that he had not been given a preliminary hearing, and that the case had been inappropriately adjourned. ECF No. 150. At a December 2016 hearing, Petitioner expressed his displeasure with Attorney Siguenza's representation and alleged that Attorney Siguenza had not been sufficiently responsive. ECF No.

176 at 2. In subsequent proceedings, Petitioner alleged that Attorney Siguenza was not "qualified to [] practice in this jurisdiction," ECF No. 174 at 5, and failed to keep him informed about the proceedings, explain the plea agreement, discuss the strengths or weaknesses of the case, provide information about the evidence against him, disclose discovery, obtain his consent before seeking adjournments, or ensure that he receive a detention or preliminary hearing. *See* ECF No. 159 at 3-4; *see also* ECF No. 174 at 3-8; ECF No. 175 at 11; ECF No. 197. At his sentencing, Petitioner raised a claim of vindictive prosecution based on certain alleged promises made to him. ECF No. 174 at 8. Because he was present at the hearings, Petitioner was certainly aware what arguments Attorney Putney made on the motion to dismiss and at sentencing. *See* ECF No. 174 at 2; ECF No. 175 at 2. Furthermore, Attorney Putney raised the issues of Attorney Siguenza's ineffectiveness and the validity of his guilty plea on direct appeal.

This evidence establishes that Petitioner knew of the factual predicates for his claims before his conviction became final in March 2019. *See, e.g.*, *Yong Suk Howang v. United States*, No. 17-CV-6254, 2019 WL 1994264, at *7 (S.D.N.Y. Apr. 19, 2019) (petitioner could not rely on Section 2255(f)(4), because she "knew the *facts* supporting her claim" by the time of her guilty plea, which occurred approximately five years before she filed the petition). Indeed, Petitioner was clearly aware of the availability of a habeas petition as a remedy years before he filed the petition: In December 2018, the Second Circuit alerted him to that very fact during his direct appeal. *See Mighty*, 745 F. App'x at 430 ("[W]e decline to hear the ineffective assistance claim and dismiss it without prejudice to Mighty raising the claim pursuant to 28 U.S.C. § 2255.").

Accordingly, the petition is untimely under both subsections (f)(1) and (f)(4). The only remaining question is whether equitable tolling applies. "Section 2255(f) . . . is subject to equitable tolling in appropriate cases." *Barrett v. United States*, 961 F. Supp. 2d 403, 407 (D. Conn. 2013). "[A] petitioner is entitled to equitable tolling of the one-year statute of limitations if he shows: (1)

that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *United States v. Wright*, 945 F.3d 677, 684 (2d Cir. 2019) (internal quotation marks omitted). "To warrant equitable tolling, the circumstances of a case must be extraordinary." *Id.* (internal quotation marks omitted). "When determining what constitutes 'extraordinary' circumstances, [the Second Circuit has] observed that the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Id.* (internal quotation marks omitted). In addition, "[e]ven when extraordinary circumstances exist . . . a petitioner must demonstrate diligence to qualify for equitable tolling." *Id.* at 685.

Petitioner relies on three circumstances to justify equitable tolling. First, on September 7, 2019, Petitioner sustained a leg/knee injury during a flag-football game which inhibited his "physical mobility." ECF No. 196 at 1. From September to December 2019, Petitioner was confined to his bed, in "serious pain," and unable to travel to the law library to prepare his petition. *Id.* Second, beginning in January 2020, COVID-19 struck Petitioner's facility. *Id.* Petitioner alleges that the facility went into lockdown after the outbreak, that access to the law library and "documentations" was restricted, and that he contracted the virus and was "very sick" until June 2020. *Id.* at 1-2. Third, Petitioner suggests that his most recently retained counsel, Donald M. Thompson, "inadvertently lost track" of the petition's filing deadline "due to his congestive overload of clients" and failed to "timely [file a] motion . . . on [his] behalf." *Id.* at 2.

The Court will begin by addressing the first two circumstances. Even if true, they do not merit relief because Petitioner fails to allege that he pursued his rights diligently. *See Wright*, 945 F.3d at 684; *see also Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (equitable tolling not

5

appropriate "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

From the date his conviction became final in March 2019, Petitioner had six months to pursue his 2255 petition before he suffered from his claimed leg/knee injury in September 2019. He offers no valid reason why he did not seek relief during this period. At most, Petitioner seems to claim that he unsuccessfully attempted to obtain an affidavit from Attorney Siguenza during this period, *see* ECF No. 196 at 1; ECF No. 198 ¶¶ 5-6, but he fails to explain why that affidavit was a necessary prerequisite to filing. As discussed above, even before his direct appeal, Petitioner already possessed the necessary facts to raise his ineffective-assistance claims against Attorney Siguenza. *See, e.g.*, *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003) (noting that the doctrine of equitable tolling "does not convey a right to an extended delay while a habeas petitioner gathers every possible scrap of evidence that might support his claim"); *Lloyd v. Van Natta*, 296 F.3d 630, 633-34 (7th Cir. 2002) (state's alleged refusal to provide complete trial transcript did not justify equitable tolling, because petitioner "was present at his trial," "knew the basis on which he could have asserted prosecutorial misconduct," and therefore did not "need a transcript to proceed with filing a habeas corpus petition"); *Lee v. Portuondo*, No. 02-CV-3990, 2003 WL 22173078, at *5 (E.D.N.Y. Aug. 29, 2003) (collecting cases). Indeed, Attorney Siguenza's affidavit could not have been a necessary prerequisite to filing the petition because, as the present petition proves, Petitioner has shown himself capable of filing a petition without that affidavit. *Cf. McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007) ("[Petitioner] himself proved that the content of the correspondence was not a 'vital fact' underlying his claims as he filed his habeas corpus petition without possession of those documents. Obviously, he could have filed his petition earlier had he chosen to do so.").

Petitioner goes on to allege that from early September 2019 to June 2020, he was incapacitated due to his injury and COVID-19. *See* ECF No. 196 at 1-2. Even assuming that to be true, that still leaves a subsequent window of more than nine months in which Petitioner was physically capable of completing his petition but failed to do so.

As to that period, Petitioner alleges only that the lockdowns associated with the pandemic prevented him from accessing the law library and obtaining necessary "documentations." *Id.* at 2. The Court acknowledges that "the effects of the COVID-19 pandemic"—especially at Petitioner's facility, FCI Elkton[3]—"could conceivably present extraordinary circumstances." *Hines v. United States*, No. 20-CV-10064, 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021). Nevertheless, a mere "passing reference to the pandemic or the resulting lockdown" is insufficient to satisfy the burden of "establishing that a court should apply the doctrine of equitable tolling." *Id.* Like his claim regarding Attorney Siguenza's affidavit, Petitioner fails to identify a causal connection between his purported lack of access and his inability to file his petition. Per Rule 2(b)(1)-(3) of the Rules governing Section 2255 Proceedings, a motion to vacate must "specify all the grounds for relief available to the moving party," "state the facts supporting each ground," and "state the relief requested." Petitioner does not articulate why he needed access to the law library in order to fulfill those requirements or why he could not simply "prepare and submit a simple [] document to preserve his rights under § 2255." *Id.* at *3. The petition he ultimately filed largely consists of a factual recitation of his claims, with only a few scattered citations to legal authorities. Given that, the Court cannot discern any reason why Petitioner needed to await access to the law library in order to complete and file the petition. *See, e.g., Mairs v. Fields*, No. 20-CV-1451, 2021 WL 4311140, at *2-3 (E.D.N.Y. Sept. 22, 2021) (limited access to law library or legal assistance due to COVID-19 pandemic did not justify equitable tolling, where, *inter alia*, "Petitioner made no

---

[3] *See, e.g., United States v. Aikens*, 462 F. Supp. 3d 301, 304 (W.D.N.Y. 2020) (describing the "dire" situation at FCI Elkton in the early months of the pandemic).

legal arguments that would have required lengthy library access prior to submission"); *Hamilton v. Inch*, No. 14-CR-340, 2021 WL 4254941, at *3-4 (N.D. Fla. June 23, 2021) (law library restrictions due to pandemic did not justify equitable tolling, where petitioner failed to explain "why he necessarily needed access to the law library to file a timely petition"); *Pearson v. United States*, No. 14-CR-340, 2020 WL 1905239, at *3 (N.D. Tex. Apr. 17, 2020) ("[Petitioner] . . . fails to explain why he needed access to the law library to submit his petition even though his petition includes no legal arguments."). Furthermore, it is evident that Petitioner was not wholly incapable of filing legal materials with the Court during the early months of the pandemic, as he submitted a motion for compassionate release in May 2020 (ECF No. 180), along with two follow-up responses in June and July 2020 (ECF Nos. 189, 190).[4]

Thus, leaving aside the time taken up by his injury and illness, Petitioner waited nearly fifteen months from the date his conviction became final to file his petition. Because Petitioner had ample time in which to file his petition notwithstanding his injury and illness, equitable tolling is not appropriate. *See Valverde*, 224 F.3d at 134 ("[E]quity does not require tolling absent a showing that the petitioner diligently pursued his application the remainder of the time between the extraordinary circumstance and the filing deadline and still could not complete it on time." (internal quotation marks and brackets omitted)).

Finally, Petitioner suggests that his most recently retained counsel, Attorney Thompson, "inadvertently lost track" of the filing deadline "due to his congestive overload of clients" and failed to "timely [file a] motion . . . on [his] behalf." ECF No. 196 at 2. Even accepting these allegations, they do not entitle Petitioner to equitable tolling. "[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Wright*, 945 F.3d at 684. "This is because a lawyer is the

---

[4] Petitioner claims that a "paralegal" submitted the July 2020 filing on his behalf. ECF No. 196 at 2. This allegation does not change the Court's analysis.

8

agent of his client, so the client generally must bear the risk of attorney error." *Id.* (internal quotation marks and brackets omitted). It is only when the attorney negligence is "so egregious as to amount to an effective abandonment of the attorney-client relationship" that "extraordinary circumstances may be found." *Id.*

What Petitioner alleges—an attorney losing track of time due to a burdensome caseload—is nothing more than "simple negligence," which does not constitute an "extraordinary" circumstance. *Holland v. Florida*, 560 U.S. 631, 652 (2010) (attorney's failure to file petition on time and lack of awareness of "the date on which the limitations period expired" was suggestive of "simple negligence"); *see also Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) ("[S]imple mistakes about the rules applied to the deadlines for filing of habeas petitions . . . . are ordinary" and do not "constitute extraordinary circumstances sufficient to support equitable tolling." (internal quotation marks omitted)); *Francis v. Comm'r of Corr.*, No. 18-CV-847, 2021 WL 3773302, at *18 (D. Conn. Aug. 25, 2021) ("[W]hen a lawyer is simply negligent in missing a filing deadline, that alone does not rise to the level of an 'extraordinary circumstance.'"). Petitioner does not allege that Attorney Thompson engaged in any more egregious error or misconduct that might render the circumstances extraordinary. *See, e.g.*, *Dillon v. Conway*, 642 F.3d 358, 364 (2d Cir. 2011) (extraordinary circumstances existed where petitioner and his wife repeatedly urged counsel to file the petition before the deadline, and counsel not only failed to do so, but also "affirmatively and knowingly" misled petitioner that petition would be filed on time); *Baldayaque*, 338 F.3d at 152 (extraordinary circumstances existed where, *inter alia*, attorney failed to file petition despite "being specifically directed [to do so] by his client's representatives," conducted no legal research on petitioner's case, and never met with petitioner).

Even if he could demonstrate egregious conduct on Attorney Thompson's part, Petitioner has failed to allege that he "was reasonably diligent in pursuing his rights." *Davis v. Lempke*, 767

F. App'x 151, 153 (2d Cir. 2019) (summary order). "[T]he act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition." *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004). "In the attorney incompetence context, [] the reasonable diligence inquiry focuses on the purpose for which the petitioner retained the lawyer, his ability to evaluate the lawyer's performance, his financial and logistical ability to consult other lawyers or obtain new representation, and his ability to comprehend legal materials and file the petition on his own." *Id.*

As an initial matter, the nature of the relationship between Petitioner and Attorney Thompson is unclear.[5] But, assuming that Petitioner retained Attorney Thompson to file the petition, he has nevertheless failed to allege that he acted with reasonable diligence. Given the Second Circuit's decision, Petitioner was well-aware that a Section 2255 petition was available as a vehicle to raise the challenges he now brings, and courts presume that "even *pro se* petitioners [] know when the limitations period expires" and "understand the need to file a [habeas] motion within that limitations period." *Wright*, 945 F.3d at 685 (internal brackets omitted). Petitioner nonetheless waited approximately six months from the date his conviction became final to retain Attorney Thompson; he offers no explanation for that delay. Regardless of whether Petitioner was subsequently incapacitated from September 2019 to June 2020—and therefore could not communicate with Attorney Thompson—Petitioner does not allege that he made any efforts after that period to keep himself apprised of Attorney Thompson's representation or that Attorney Thompson's representation somehow prevented him from filing his own *pro se* petition. *See Smith*

---

[5] Letters from Attorney Thompson's office to Petitioner could be read to suggest that Petitioner retained him for purposes of a "[p]ost conviction sentencing challenge." ECF No. 196 at 19; *see also id.* (stating that retainer agreement had been executed "for legal representation with respect to the appal [sic] of your sentencing"). In his affidavit, however, Attorney Thompson seems to claim that he was retained to help Petitioner obtain an affidavit from Attorney Siguenza, ECF No. 198 ¶ 5, not to represent him in connection with the present petition. *See* ECF No. 200 at 4. Indeed, Petitioner's other justifications for his late filing—his injury, the pandemic—imply that Petitioner believed it was his own responsibility to file the petition, not Attorney Thompson's. *See* ECF No. 196 at 1-2.

*v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("[T]he party seeking equitable tolling must have acted with reasonable diligence *throughout the period he seeks to toll*." (emphasis added)); *see also, e.g., Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 33 (2d Cir. 2015) (reasonable diligence may be shown where the petitioner "swiftly secure[s] representation and "ma[kes] efforts to reach out to [the attorney] and ensure that [he] [is] diligently pursuing post-conviction relief"); *Davis*, 767 F. App'x at 153-54 (petitioner did not show reasonable diligence, where he did not make efforts to communicate with his attorney about his petition); *Francis*, 2021 WL 3773302, at *19 (no reasonable diligence where petitioner asked attorney to file petition on one occasion but did not "at any point after that[] check[] on the status of any potential post-conviction filing"). Moreover, the present petition, along with his motions for compassionate release, show that Petitioner was capable of prosecuting his petition without legal representation. There is no apparent reason why he could not have filed a petition on his own, either before he retained Attorney Thompson in September 2019 or after he recovered from COVID in June 2020. *See Doe*, 391 F.3d at 176-78 (petitioner was not reasonably diligent, where, *inter alia*, he was aware of the grounds for challenging his conviction long before expiration of deadline, was "fully capable of acting *pro se*," and there was no evidence that petitioner "had no choice but to rely on his attorney").

Accordingly, Petitioner has failed to allege circumstances that would be sufficient to justify equitable tolling. Given that the petition is untimely, dismissal of the petition is appropriate.

II.     **Remaining Motions**

Petitioner's remaining motions are rejected in light of the Court's disposition on the petition. Petitioner's motion for immediate release from custody (ECF No. 199), his motion for discovery pertaining to Attorney Siguenza's admission in this district (ECF No. 204), his request for release on bail pending a decision on his petition (ECF No. 205), and his requests that the Court

"honor" the commands of all applicable rules, statutes, and constitutional amendments (ECF No. 216), are therefore denied.

## CONCLUSION

For the foregoing reasons, the government's Motion to Dismiss (ECF No. 209) is GRANTED. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2255—filed as a Motion to Vacate at ECF No. 194 in Case No. 6:15-CR-6109-FPG—is DISMISSED. Because Petitioner has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability is DENIED. The Clerk of Court is directed to close the civil case associated with the petition (Case No. 6:21-CV-6324-FPG).

Petitioner's other motions (ECF Nos. 199, 204, 205, 216) are DENIED.

IT IS SO ORDERED.

Dated: December 22, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
District Judge
United States District Court